## SUPREME COURT.

THE PEOPLE *ex rel.* WILLIAM A. SEAVER agt. ANDREW H. GREEN, comptroller of the city of New York.

*Mandamus — to compel the payment to relator the sum allowed by the supreme court for services as commissioner in acquiring title to lands.*

Chapter 483 of Laws of 1862, page 966, entitled " An act to prevent fraud in the opening and laying out of streets and avenues in the city of New York," does not apply to proceedings of this character.

The special purpose of the proceedings in this matter was to acquire title to the lands, within certain specified limits, for a boulevard or public drive, to be adapted and set apart for purposes of ornament, exercise and amusement. They were not carried on to open and lay out a street or avenue in the sense in which these words are used in the statute of 1862. The compensation of the commissioners is, therefore, not limited to thirty cents per foot for the lineal extent of the avenue opened as provided in the statute above referred to.

*At Special Term, September,* 1873.

The following affidavit sets forth the facts necessary to the proper understanding of the case :

CITY AND COUNTY OF NEW YORK, *ss. :*

William A. Seaver, of the city of New York, being duly sworn, says : That, on or about the 17th day of October, 1872, this deponent, William C. Traphagen and John McClave, were, by a rule or order, duly made and entered at a special term of the supreme court of the state of New York, duly appointed commissioners of estimate and assessment, in a matter then pending in said court, entitled : " In the matter of the application of the department of public parks, and the

department of public works, for and in behalf of the mayor, aldermen and commonalty of the city of New York, relative to acquiring title for the use of the public to all the lands required for laying out a public road or drive, northwardly from the southerly line of One Hundred and Fifty-fifth street to the intersection of the Kingsbridge road with Inwood street, as laid out by resolution of the commissioners of the Central park, in the city of New York."

That thereafter and pursuant thereto, the said William C. Traphagen and John McClave and this deponent, took and duly filed the oath of office, and entered upon the discharge of their duties as such commissioners.

That thereafter such proceedings were duly had in said matter, that the commissioners aforesaid duly made their report to the supreme court, in and by which were specified the sums awarded by the said commissioners to the parties whose lands were taken and acquired in the said proceedings, and for costs, charges and expenses hereinafter mentioned, and also the sums assessed by the said commissioners, upon the several lots or parcels of land benefited by the said improvements, and upon the mayor, aldermen and commonalty of the city of New York, and said report was, in all respects, duly confirmed by the said supreme court on or about the 3d day of June, 1873, and duly filed and now stands unreversed, and not in any respect modified.

That, prior to the making of said report, the costs, charges and expenses, incurred by reason of the proceedings in said matter, were presented for taxation to one of the justices of the said supreme court, pursuant to due notice in that behalf, and were by said justice duly taxed and allowed, as appears by the record thereof duly filed and now in the hands of the comptroller of the city of New York, and among the said costs, charges and expenses was taxed and allowed to this deponent, for his fee and services as commissioner in said proceedings, the sum of $5,000; and said costs, charges and expenses so taxed and allowed were duly set

forth by the said commissioners, in their said report before the confirmation thereof, and payment of said costs, charges and expenses duly provided for in said report by assessment; that no part of the said moneys has been paid and the full amount thereof is due and owing to this deponent. That very large sums of money, and much more than sufficient to pay the costs and expenses incurred by reason of the proceedings in' said matter, have been duly collected and paid over to the finance department of the city of New York, as deponent is informed and believes. And the said comptroller has, in his hands or under his control, sufficient funds applicable to payment of said costs, charges and expenses. And this deponent has demanded of the comptroller of the city of New York the payment of the said sums of money so awarded to him as his fees as such commissioner. But said comptroller refuses and neglects to make payment of the same, or to draw or cause to be drawn the proper warrant in that behalf on the chamberlain of the city of New York for the said sum of money so owing to deponent, or for any part thereof. That prior to the 1st day of January, 1872, Andrew H. Green has held and now holds the office of comptroller of said city.

Wherefore, this deponent prays that an order may be made directing the said comptroller to show cause why a peremptory writ of mandamus should not issue out of and under the seal of this court, directed to Andrew H. Green, comptroller of the city of New York, and requiring and commanding him to forthwith pay over to this deponent the said sum of $5,000 and any interest which may have accrued thereon in favor of deponent, as and for his fees for services as commissioner as aforesaid, in such form and substance as to the court shall seem meet and proper, and why this deponent should not have such other or further relief in the premises as to the court may seem just.

WM. A. SEAVER.

People ex rel. Seaver agt. Green.

*A. R. Lawrence, jr.*, for relator.

*E. Delafield Smith*, counsel to the corporation.

FANCHER, *J.* — William C. Traphagen, John McClave and William A. Seaver, severally apply for writs of mandamus against the comptroller, requiring him to pay the allowances made to the relators, as commissioners in the proceedings to open the public drive from One Hundrd and Fifty-fifth street to the Kingsbridge road. On the 3d of June, 1873, the report of the commissioners was confirmed, and the costs and expenses were taxed. Among the items thus allowed were the charges of the relators, which were taxed at $5,000 each.

Considering the extent and character of the services of the relators, the items allowed them were reasonable and much less than has been generally allowed for similar services.

Their work was performed with expedition, and to the apparent satisfaction of all parties interested.

But the comptroller contends that chapter 483, laws of 1862, page 966, limits the compensation of the commissioners to thirty cents per foot for the lineal extent of the avenue opened.

The phraseology of the statute, as to the opening of streets or avenues, seems to support the views of the comptroller.

The extent of this boulevard or public drive was 15,238.79 feet, which, at thirty cents per foot, would make the total compensation $4,571.61, or $1,527.01 to each of the commissioners. This would not be an adequate compensation to the commissioners. The counsel for the relators contends that the statute of 1862 is not applicable to the case of an opening of a street or avenue which was authorized by the legislature, but only to a street or avenue opened by the common council. *In the Matter of the Widening of Broadway*, this precise question was considered at special term by Mr. justice GILBERT. He came to the conclusion that the act of 1862 does not refer to street proceedings originating in the legislature, but was intended to apply only to proceedings which

People ex rel. Seaver agt. Green.

originated in the common council. The learned justice has not supported his conclusion by any reasoning, and it is difficult, on reading the statute, to perceive what application the statute has to street or avenue proceedings initiated by the common council, which would not equally be the case in such proceedings initiated by an act of the legislature. There is no limitation in the words of the statute. Its title is " An act to prevent fraud in the opening and laying out of streets and avenues in the city of New York," and a chief purpose of its provisions is to reduce and limit the expenses of proceedings in such cases.

But I am not called upon to determine on these motions whether the decision of Mr. justice GILBERT, in the Broadway case was correct or not, and I disclaim any intention now of doing so.

As it was a special term decision, it could only be appropriately reversed at the general term.

The proceedings in this matter were initiated by the joint application of the department of public parks and the department of public works, for and in behalf of the mayor, aldermen and commonalty of the city of New York, and the proceedings were authorized by an act of the legislature. So far, all proceedings initiated by the common council are authorized by an act or by acts of the legislature.

The common council must find their authority for the proceedings in the statutes of the state. But these proceedings were not carried on to open or lay out a street or avenue. It might as well be said the purpose was to open a highway. No one would claim that the general laws of highways apply to the proceedings. The special purpose of the proceedings in this matter was to acquire title to the lands within certain specified limits, for the laying out of a road or public drive, northward from One Hundred and Fifty-fifth street to the intersection of the Kingsbridge road with a street called Inwood street.

Such a road or public drive is not technically a street or

avenue. There are roads or public drives through and beyond the Central park. They are not strictly streets or avenues. The word "drive," employed as a noun, has been lately extended beyond its former meaning, which only signified an excursion in a carriage ; so the word "boulevard," which originally indicated a bulwark or rampart, and was afterward applied to a public walk or road on the site of a demolished fortification, is now employed in the same sense as public drive.

A park is a piece of ground adapted and set apart for purposes of ornament, exercise and amusement. It is not a street or road, though carriages may pass through it.

So a boulevard or public drive is adapted and set apart for purposes of ornament, exercise and amusement. It is not technically a street, avenue or highway, though a carriage-way over it is a chief feature.

I think, therefore, that the statute of 1862 does not apply to the proceedings in this matter and that as the allowances made to the commissioners is reasonable and proper, the motions for mandamus made by the relator should be granted, with ten dollars costs in each case.

The above decision was affirmed by the general term, October, 1873.

INGRAHAM, P. J., BRADY and DANIELS, JJ. No opinion rendered.