## THE WEST CHICAGO PARK COMMISSIONERS

### *v.*

## THE WESTERN UNION TELEGRAPH COMPANY *et al.*

*Filed at Ottawa May 12, 1882.*

1. PARK COMMISSIONERS—*power to locate boulevards to connect with other parks.* Under section 12 of the act of 1869, in regard to the completion, improvement and management of public parks, etc., the West Chicago Park Commissioners have the power to condemn land for a boulevard within their district, to connect the park and boulevard under their control with those under the control of the South Park Commissioners. This section relates to a new and entirely different subject matter, not provided for in the original act relating to the West Chicago Park.

2. SAME—*two sets of commissioners not required to join in proceeding to condemn.* Section 12 of the act of 1869 is general, and has no specific reference to any particular park commissioners, and is limited only to the effect that the parks whereof they are commissioners shall have been established in two or more towns contiguous to each other. It does not require that two sets of commissioners shall constitute a new and single board for the purpose of connecting their several parks. Each set of commissioners simply acts within its own district. If the parks sought to be connected lie in separate districts, it may require coöperative action to complete the connection. But in such case the jurisdiction of each of the commissioners must terminate with the boundary of their respective districts.

3. SAME—*are "corporate authorities."* The West Chicago Park Commissioners are a *quasi* municipal corporation, capable of being invested by the legislature with power to assess and collect taxes within the district, and have the power to condemn land for the purpose of making a boulevard or pleasure way connecting two or more parks already established by law.

APPEAL from the County Court of Cook county; the Hon. MASON B. LOOMIS, Judge, presiding.

· This was a condemnation proceeding begun by the West Chicago Park Commissioners under an ordinance passed by them on May 2, 1881, and providing as follows:

1. That a boulevard running from the south end of Douglas Park to the Illinois and Michigan Canal, be located and established, as shown by an accompanying map.

2.   That said improvement shall be made and the cost thereof paid by special assessment, to be levied on the property to be benefited thereby.

3.   That the attorney of the board shall file a petition in the name of the board in the county court to condemn the necessary lands. ·

The county court sustained a demurrer to the petition, and dismissed the petition, to reverse which judgment this appeal is prosecuted.

Mr. GEO. W. SMITH, for the appellant:

The special acts of 1869 create this board, and section 12 of the act of 1873 gives the commissioners the right to acquire land by condemnation, for the purpose of connecting the park with any other of a contiguous district.   This is an express grant of a franchise.   *Chicago and Western Indiana R. R. Co.* v. *Dunbar*, 95 Ill. 571.   See, also, *Kreigh* v. *City*, 86 id. 407; *People* v. *Walsh*, 96 id. 232.

It is urged that the commissioners are not corporate authorities.   This has been settled otherwise.   *Andrews* v. *People*, 83 Ill. 530;   *Andrews* v. *People*, 84 id. 28;   *Wilcox* v. *People*, 90 id. 192;   *People* v. *Walsh*, 96 id. 232;   *Kreigh* v. *City*, 86 id. 407;   *Atchison* v. *People*, 95 id. 452.

Because they do not levy the general tax, and because a specific method for the improvement of a boulevard, or laying a sewer, is pointed out, furnish no reason for overturning or reversing a plain and express grant of power to select and appropriate lands.   Even this limitation, so far as concerns the improvement of streets taken for boulevards, has since been modified by the act of 1879, concerning drives to public parks.   Rev. Stat. chap. 105, sec. 49; Laws of 1879, p. 216; *People* v. *Walsh, supra.*

Mr. EUGENE E. PRUSSING, for the appellees Schuttler and Holtz, contended that the act of 1873, of which section 12 is a part, confers the power to levy the assessments authorized

therein, upon the town supervisor, clerk and assessor, and designates and constitutes them, and not the park commissioners, the corporate authorities of said town. There can not be two sets of corporate authorities having this power in the same town. *Updike* v. *Wright,* 81 Ill. 46.

While it may be true that this court held in *Andrews* v. *People,* 83 Ill. 529, that the West Park Commissioners were corporate authorities for park purposes under the act of 1869, it is clear that for any purpose provided for in the act of 1873 they are not the corporate authorities. See sec. 4 of the act of 1873.

Messrs. LEAMING & THOMPSON, for the appellee Geo. W. Lay:

The express limitation contained in the special act of 1869 creating the West Park Commissioners, declaring that the part of the boulevards south of the Chicago, Burlington and Quincy railroad track shall not be made unless the land therefor shall be acquired free of cost, is not repealed by section 12 of the general act of 1873. Repeal by implication is repugnant to the established rule for the construction of statutes. *Town of Ottawa* v. *County of LaSalle,* 12 Ill. 339, and cases cited; *City of East St. Louis* v. *Maxwell,* 99 id. 439; *Wragg et al.* v. *Penn Township,* 94 id. 11; *Gunnarssohn* v. *City of Sterling,* 92 id. 569; *Covington* v. *City of East St. Louis,* 78 id. 548; Dillon on Mun. Corp. sec. 54.

The West Chicago Park Commissioners are not included in the class of park commissioners to which section 12 of the act of 1873 refers, and said section does not apply to or confer any power upon said West Chicago Park Commissioners. The improvement contemplated is a local improvement to be made by special assessment, and as such can only be made by the corporate authorities of cities, towns and villages. The act in question expressly designates the town supervisor, clerk and assessor the corporate authorities of

such town to levy the tax or any assessments in said act authorized. Sec. 12, act of 1873, (Rev. Stat. sec. 38, chap. 105); Constitution of 1870, sec. 9, art 9; sec. 4, act of 1873, (Rev. Stat. chap. 105, sec. 30); *Updike* v. *Wright,* 81 Ill. 49.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

By the fifth section of the "Act to amend the charter of the city of Chicago, to create a board of park commissioners, and authorize a tax in the town of West Chicago, and for other purposes," approved February 27, 1869, (Private Laws of 1869, vol. 1, p. 345,) it is, among other things, enacted that the West Chicago Park Commissioners "shall have power, and it is made their duty, to acquire the lands required for a road or pleasure way, or boulevard, not less than two hundred and fifty (250) feet, beginning at a point north of Fullerton avenue, and at or near the north branch of the Chicago river, and extending west, to a point one mile or more west of Western avenue, and thence southerly to a point at or near the Illinois and Michigan Canal; also for three parks, upon the line of said boulevard, and upon the part of the same between the two last mentioned points, of not less than one hundred (100) nor more than two hundred (200) acres each, the first to be located north of Division street, the second to be located between Kinzie street and Harrison street, and the third to be located between Harrison street and the Chicago, Burlington and Quincy Railroad track," etc. By the concluding part of the section it is enacted, "the part of said boulevards    *    *   .*    south of the said Chicago, Burlington and Quincy railroad track shall not be made unless the land therefor shall be acquired free of cost to said board, and shall not be ornamented or improved until after the improvement of the parks shall have been completed, unless the same be done by voluntary contributions."

The condemnation sought is for a boulevard to connect the boulevard and parks under the control of the West Chicago

Park Commissioners with those under the control of the South Park Commissioners, the greater portion of which will lie "south of the said Chicago, Burlington and Quincy railroad track," and is therefore within this prohibition, if it be applicable to such an improvement. This is admitted by appellant's counsel, but he claims the condemnation is authorized by the twelfth section of the "Act in regard to the completion, improvement and management of public parks and boulevards, and to provide a more efficient remedy for the collection of delinquent assessments," (Rev. Stat. 1874, p. 747,) which is as follows:

"Sec. 12. *Be it further enacted,* That in cases where, by virtue of any act or acts heretofore passed, public parks or boulevards have been designated or established in two or more towns contiguous to each other, and where the commissioners authorized by such act or acts to locate such parks or boulevards shall desire to connect the same by a boulevard or pleasure way, so as to form a continuous improvement, or shall desire to connect such park with other portions of the park district in which such park is located, by a boulevard or pleasure way, it shall and may be lawful for such commissioners to select and designate the line of such boulevard or pleasure way, and to acquire title to the lands which may be necessary to make such connection, by purchase or otherwise; and in case such commissioners can not agree with the owner or owners, lessee or occupant of any of the real estate so selected, they may proceed to procure the condemnation of the same in such manner as is now or may be prescribed by any general law for the condemnation of lands for public use, and the cost and expense of acquiring title to such land shall be levied upon and collected by special assessment upon the property deemed specially benefited by the location of such boulevard or pleasure way, in the same manner as the cost of other lands for parks and boulevards is assessed under the several acts creating such boards; and

such boulevards or pleasure way shall be under the control and management of such park commissioners, the same as other public grounds by them established."

Counsel for appellees contend this section does not repeal the prohibition in the fifth section of the act of 1869. In this we entirely agree with them, but we do not agree with the conclusion sought to be drawn therefrom. The fifth section of the act of 1869 has reference exclusively to the acquiring of lands "for a road or pleasure way, or boulevard," and "for three parks, upon the line of said boulevard," within a certain prescribed district, over which is given jurisdiction to the "West Chicago Park Commissioners," for park purposes, whereas this section relates to a new and entirely different subject matter not provided for by that section, nor directly affected by it, namely, to cases "where, by virtue of any act or acts theretofore passed, public boulevards have been designated or established in two or more towns contiguous to each other, and where the commissioners authorized by such act or acts to locate such parks or boulevards shall desire to connect the same by a boulevard or pleasure way, so as to form a continuous improvement, or shall desire to connect such park with other portions of the park district in which such park is located, by a boulevard or pleasure way."

But counsel for appellees contend this section can have no application to the West Chicago Park Commissioners, because it does not describe them; that its reading, if carefully observed, confines it to the South Park Commissioners alone; that to apply it in any manner to the West Chicago Park Commissioners, it is necessary to construe the language as applying to two different sets of commissioners of parks located, respectively, in towns contiguous to each other, and that if this construction were followed, it necessarily would require that both boards of park commissioners—namely, that of the West Chicago Park and that of the South Park,—

should join in the proposed improvement, and the boulevard or pleasure way thus established would be under the management and control of such park commissioners the same as other "public grounds by them established," which is absurd.   The language of the section seems to afford a complete answer to this position.   The act professes to be general, and makes no specific reference to the South Park Commissioners.   The language is as comprehensive as could have been used to indicate that it applies to all cases where it is desired by the commissioners to connect public parks established in two or more towns contiguous to each other. "Where  *  *  *  public parks  *  *  *  have been established in two or more contiguous towns to each other," and "where the commissioners authorized to locate such parks," not the commissioners of a particular park or park district, but generally, limited only by the previous language, to the effect that the public parks whereof they are commissioners, shall "have been established in two or more towns contiguous to each other,"  *  *  *  "shall desire to connect the same,  *  *  *  it shall and may be lawful," etc.   There is nothing here requiring that two sets of commissioners shall constitute a new and single board for this purpose, but additional power is simply vested in each to make a boulevard or pleasure way for a purpose not within the contemplation of the respective original acts under which they were created—each set of commissioners simply acts within its own district.   The new boulevard to be created may all lie in one district, connecting with a boulevard already created in another district to the common boundary, or partly in one district and partly in another, and thus require coöperative action to its completion.   But in either case the jurisdiction of the commissioners must necessarily terminate with the boundaries of their respective districts.

Again, it is contended by counsel for appellees, the improvement can only be made by the corporate authorities of cities,

towns and villages, and these commissioners are not such authorities, and *Updike* v. *Wright*, 81 Ill. 49, is referred to as sustaining the proposition. This is a misapprehension. The question of who constitute the corporate authorities of a municipality, was not before the court in that case, nor discussed in the opinion. It was conceded those claiming there to act as drainage commissioners were not such authorities. The language quoted by counsel from the opinion has reference to the *corporation*, which is empowered to make local improvements, by special assessments or special taxation, on contiguous property, etc., and not to the *agencies* or *instrumentalities* through which these corporate powers must be exercised.

But in *The People ex rel. Wilson et al.* v. *Salomon*, 51 Ill. 37, it was held, "while section 5 of article 9 of the constitution,—which provides that the corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes,—must be construed as a limitation upon the power of the legislature to authorize any other than corporate authorities to assess and collect local taxes, and as limiting the objects of local taxation to corporate purposes, yet it does not confine the legislature to any particular corporate authorities, or to any then known instrumentalities of that character. There is no prohibition against the creation, by the legislature, of every conceivable description of corporate authorities, and when created, to endow them with all the faculties and attributes of preëxisting corporate authorities." And so it was held several towns might be united into one district for park purposes, and in this respect, and for this purpose, the power of assessing or collecting taxes might be vested in commissioners specially created for the purpose. And again, in *Wilcox* v. *The People*, 90 Ill. 186, in speaking of these same West Chicago Park Commissioners, we said: "By the decisions of this court this board of park commis-

sioners is held to be a *quasi* municipal corporation, a 'corporate authority,' in whom it was competent for the legislature to vest the power to assess and collect taxes within the park district created." This is reiterated in *The People ex rel.* v. *Walsh et al.* 96 Ill. 232, and it was there also held it was competent for the General Assembly to place streets of the city of Chicago under the control and management of park commissioners.

We do not at present conceive it our duty to inquire by what means the money to pay the expenses arising from this condemnation shall be raised. The question before us relates only to the right to exercise, or to cause to be exercised, for the purpose here indicated, the power of condemnation.

We have, perhaps, omitted to notice specifically some minor objections, but if so, we deem them only of secondary importance, and necessarily controlled by what has already been said in regard to the objections we have considered.

The judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*