CITY OF MEMPHIS *et al. v.* MARGARET HASTINGS.

(*Jackson.* April Term, 1904.)

1. **EMINENT DOMAIN.** May be exercised by city for parks, park purposes, and parkways beyond its limits under statute so providing; case in judgment.

Under the statute (Acts 1879, ch. 11) incorporating the city of Memphis as a taxing district, and providing (in sec. 20) that private property within the limits thereof may be taken for public use, and under an amendatory statute (Acts 1899, ch. 142, secs. 2 and 5) empowering such city to purchase or acquire by condemnation land for parks, park purposes, and parkways connecting said city and parks, or connecting parks with each other, either within or without the limits of such city, but not more than ten miles beyond such limits, the city of Memphis is authorized and empowered to condemn, in accordance with the law, private property without and beyond its limits and within ten miles thereof, for a way or boulevard running between and connecting its parks situate beyond its limits. (*Post, pp.* 145-154.)

Acts cited and construed: 1879, ch. 11, sec. 20; 1899, ch. 142, secs. 2 and 5.

Cases cited and approved: Newman v. Ashe, 9 Bax., 380; Thompson v. Moran, 44 Mich., 605; Warner v. Gunnison, 31 Pac., 238; Houghton v. Copper Co., 57 Mich., 547; Lester v. Jackson, 69 Miss., 887; Chambers v. St. Louis, 29 Mo., 543; Hagood v. Hutton, 33 Mo., 244.

2. **SAME.** Parks, park purposes, and parkways beyond a city's limits are for a public use, and not merely for public convenience.

The condemnation of private property or land under eminent domain laws for parks, park purposes, or parkways by a city without and beyond its limits is for a public use, within the sense of the constitution, and not merely a public convenience. (*Post, pp.* 154-157.)

Memphis v. Hastings.

Cases cited and approved: Park Commissioners v. Telegraph Co., 103 Ill., 33; United States v. Cooper, 20 D. C., 104; Shoemaker v. United States, 147 U. S., 282; United States v. Railroad, 160 U. S., 668; Rowan v. Portland, 47 Ky. (8 B. Mon.), 232; St. Louis Co. v. Griswold, 58 Mo., 175; In re Mayor, 99 N. Y., 569; In re Central Park Com., 63 Barb., 282; People v. Solamon, 51 Ill., 37; Foster v. Commissioners, 133 Mass., 321; Commissioners v. Henry, 38 Minn., 266; Commissioners v. Armstrong, 45 N. Y., 234; In re Commissioners, 52 N. Y., 137; In re Commissioners, 50 N Y., 493; In re Commissioners, 69 Barb., 282; Root's Case, 77 Pa. St., 276.

3. **SAME.** Statute must provide compensation, and the manner of enforcing same.

Legislation conferring the right of eminent domain to take private property for public use is not valid and constitutional, unless just compensation is provided for, and the mode and manner of ascertaining and enforcing the same is fixed and established. (*Post, p.* 157.)

Constitution cited and construed: Art. 1, sec. 21.

Case cited and approved: Water Co. v. Scott, 3 Cates, 321.

4. **SAME.** Same. Statute providing for condemnation in accordance with existing laws is valid, when; case in judgment.

A statute (Acts 1879, ch. 11, sec. 20) providing that "private property . . . may be taken for public use in the manner now provided by law for the application of private property to public use," amended by a statute (Acts 1899, ch. 142, sec. 2) conferring "the power of eminent domain" and providing that "the proceedings for the exercise of this power of condemnation shall be the same as that now provided by law for the taking of private property for public use," incorporates into itself the general statutes of the State providing for the condemnation of private property for public uses as fully as though they had been specifically designated by proper reference, and is valid in mak-

Memphis v. Hastings.

ing provision for just compensation, where the existing statutes for the condemnation of private property for public use afford the landowner an ample remedy to receive just compensation for the land taken. (*Post, pp.* 151, 157-162.)

Code cited and construed: Secs. 1844, 1845, 1846, 1849, 1856, 1857, 1859, 1865, 1866 (S.); secs. 1549, 1550, 1551, 1554, 1561, 1562, 1564, 1570, 1571 (M. & V.); secs. 1325, 1326, 1327, 1330, 1337, 1338, 1340, 1346, 1347 (T. & S. and 1858).

Acts cited and construed: 1879, ch. 11, sec. 20; 1899, ch. 142, sec. 2.

5.  **STATUTES.** Title authorizing parks covers body of act authorizing parks and parkways or boulevards connecting parks.

A statute whose title authorizes and empowers cities to acquire, improve, and maintain parks, may in its body, authorize the acquisition or condemnation of land for parkways or boulevards extending through the country and connecting parks with each other, for such provision is germane to the title, and within the general purview thereof. Moreover, such parkways and boulevards connecting parks with each other constitute and become parts of the parks themselves. (*Post, pp.* 162-165.)

Acts cited and construed: 1879, ch. 11; 1899, ch. 142.

Constitution construed, but not cited: Art. 2, sec. 17.

Cases cited and approved: In re Mayor, 34 Hun, 444; People, ex rel., v. Seaver & Green, 52 How., 440; In re Mayor, 99 N. Y., 576.

6.  **SAME.** Title authorizing public parks covers body of act authorizing a park commission, and election of park commissioners.

A statute whose title authorizes the acquisition, improvement, and maintenance of public parks, may in its body, authorize the creation of a park commission and the election of park commissioners; for such provision is clearly within the purview of such title, as a park commission is a useful and almost in-

Memphis v. Hastings.

dispensable instrumentality for the maintenance and supervision of a system of public parks. (*Post, pp.* 165-166.)

Acts cited and construed: 1879, ch. 11; 1899, ch. 142.

Constitution construed, but not cited: Art. 2, sec. 17.

7. **SAME.** **Title of amendatory act reciting title of act to be amended need not enlarge its scope, when.**

An amendatory act, whose caption merely recites the title of the original act, without enlarging its scope, is constitutional and valid, provided its purview is germane to the title of the original act. (*Post, p.* 166.)

Constitution construed, but not cited: Art. 2, sec. 17.

Case cited and approved: Hyman v. State, 87 Tenn., 109.

---

### FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County.—J. P. YOUNG, Judge.

MCFARLAND & CANADA, for Memphis.

RANDOLPH & RANDOLPH, for Hastings.

---

MR. JUSTICE MCALISTER delivered the opinion of the Court.

This record presents a petition exhibited in the circuit court of Shelby county, asking the condemnation of a certain strip of land, nine hundred feet long and fifty feet wide, belonging to the defendant, for the purpose of

113 Tenn—10

extending a boulevard along the west side of Trezevant avenue.

It is alleged therein that under and by virtue of chapter 142, p. 250, of the Acts of 1899, the city of Memphis is empowered to purchase by private negotiation or acquire by condemnation a parkway for the purpose of connecting the city with any parks that might be established, or for the purpose of connecting the parks with each other.

It is further alleged that, for the purpose of carrying out the powers conferred by said act, the city was authorized to establish by ordinance a park commission, composed of three members, and that Robert Galloway, L. B. McFarland, and J. R. Godwin had been legally elected and now constitute said park commission. It is further alleged that on the 5th of November, 1903, an ordinance was passed authorizing and directing the park commissioners to obtain, establish, and construct a system of parkways in and around the city of Memphis; that under and by virtue of this ordinance the park commission did on the 9th day of January, 1904, establish said parkway so as to begin at Overton Park, and run thence south along and with Trezevant avenue to a point 700 feet south of the right of way of the Southern Railway Company, thence west to Cooper avenue, thence south along Cooper avenue to Lamar boulevard, and thence in a westerly and southwesterly direction to Kerr avenue, and along and with Kerr avenue to Riverside Park and the Mississippi river; said parkway to be

200 feet in width as far south as Union avenue, and for the balance of the distance to average 150 feet in width.

It is then alleged that, in order to construct this parkway or boulevard, a certain portion of the property of defendant is required, and that the object of this petition is to acquire the same by condemnation proceedings.

The prayer of the petition is that the city of Memphis be decreed an easement or right of way to the strip of land described, and that the court issue its writ of inquiry of damages to the sheriff, commanding him to summon a jury, to be named by the court, to inquire into and assess the damages of the defendant by reason of the taking of the strip of land described.

The defendant resisted the condemnation of said land, and in her answer relied upon the following grounds, viz.:

(1) Because the city of Memphis is attempting to condemn property for public uses situated outside of its corporate limits, and that any act authorizing the exercise of the power to condemn land lying wholly without its corporate limits is unconstitutional and void.

(2) That the said chapter 142, p. 250, of the Acts of 1899, is in violation of article 1, section 21, of the constitution of Tennessee, and is also in violation of the fourteenth amendment of the constitution of the United States, because it does not provide for just compensation to be paid to the owner of the property sought to be condemned, and that the mode and manner of ascertaining

such compensation, and enforcing the same, is not fixed and established in said act.

(3)    That it violates article 2, section 17, of the constitution of Tennessee, because the body of the act provides for subject-matters outside of the title, and not in any sense germane to the subject suggested by it.

The cause was heard at the March term, 1904, by the Honorable J. P. Young, who was of opinion that the act of 1899 was unconstitutional, because the subjects of the act are not embraced in the title, and further that said act makes no provision for compensating the owners of property so condemned for a park boulevard, and further that such a boulevard connecting the parks is a public convenience, and not a public necessity.

The court thereupon dismissed the petition. The city appealed, and has assigned errors.

Chapter 142, pp. 250-252, Acts 1899, section 1, provides as follows:  .   .   .

"The parks or lands to be used for park purposes may be purchased either by private negotiation or by condemnation, as, hereinbefore provided, as may be determined by the legislative council. If the parks or land for park purposes be purchased by private negotiation, the negotiation shall be conducted by such member or members of the legislative council as shall be designated by said council, but no purchase shall be effected until the same has the approval of the majority of the legislative council. And said parks or land for park purposes may be purchased either within or without the limits of such

taxing districts or cities, but not more than ten miles. from the nearest point on the limits of such taxing districts or cities, as such limits may be at the time of such purchase."

Section 2:

"Any such taxing district or city may condemn parks or land for park purposes under the power of eminent domain and such taxing districts and cities are hereby expressly given the power to condemn for park purposes, the yards, switches, tracks, the depot and property of any character, of any railroad company and also the property of any manufacturing establishment and also the property of any other person or corporation either within or without the limits of said taxing district or city, but not over ten miles beyond the nearest point in said limits as such limits may be at the time of such condemnation, and the proceedings for the exercise of this power of condemnation shall be the same as that now' provided by law for the taking of private property for public uses."

Section 3:

"That in order to raise the means necessary to purchase or condemn parks or land for park purposes, such taxing districts or cities are hereby authorized and empowered to issue their coupon bonds to any amount not exceeding two hundred and fifty thousand dollars, bearing a rate of interest not exceeding five per cent maturing at such time, callable in such manner as the legisla-

tive council may determine and payable in lawful money
of the United States of America," etc.

Section 4:

"That such taxing district or city is authorized and
empowered to levy a special park tax only so long as said
bonds shall remain outstanding," etc.

Section 5:

"That such taxing district or city shall have the power
to purchase by private negotiation or acquire by con-
demnation a park or parkways either running from said
taxing district or city to any such park, or running be-
tween and connecting such parks; and such taxing dis-
trict or city may purchase or condemn such parkways
either within or without the limits of such taxing dis-
trict or city, but in no case more than ten miles beyond
the nearest point of the limits of such taxing district or
city as the same may be at the date of such purchase or
condemnation; and the proceeds of the bonds aforesaid
may be used for improving or maintaining such park-
ways."

Section 6 provides for the creation of a park commis-
sion by the legislative council of such taxing district, to
be composed of three members, who shall be elected by
said legislative council.

Section 7 provides that the legislative council of such
taxing district or city shall have full and ample power
to establish, by ordinance, rules and regulations to gov-
ern said park commission, and to govern the employ-
ment and discharge of such employees, and to fix the of-

ficial bonds and the compensation of such park commissioners and employees.

The first objection to this act is that it undertakes to permit the municipal authorities to condemn land for parks and for the building of parkways situated beyond the municipal limits and it is insisted that the legislature has no power to delegate such authority.

An examination of the act of 1899 will show that it is an amendment to chapter 11, p. 15, of the Acts of 1879, constituting the city of Memphis a taxing district, and providing a local government for the same.

Section 20 of chapter 11, p. 28, of the Acts of 1879, provides:

"That the private property within the taxing districts may be taken for public use in the manner now provided by law for the application of private property to public use."

It is insisted that under the original charter just recited, conferring upon the city of Memphis the right of eminent domain, the exercise of that power was expressly limited to property lying within the corporate limits. But it is manifest that the act of 1899 has enlarged the exercise of the right of eminent domain by the corporate authorities of the city of Memphis so as to permit property situated beyond the corporate limits to be appropriated and condemned for the purpose of establishing parks, and connecting them by boulevards with the city and with each other.

It is insisted, moreover, on behalf of appellants, that there is a distinction between a grant of authority from the legislature to a municipal corporation to exercise the right of eminent domain in the condemnation of property situated beyond the corporate limits for the establishment of a park, and the grant of such authority for the building of a boulevard connecting such parks. The position is that while a park may be a matter of public necessity to the inhabitants of a crowded city, as a means of furnishing them healthful recreation, yet no such necessity exists for the condemnation of land for the building of a boulevard merely to connect such parks.

The record discloses that the boulevard in question is to be about three miles long, entirely without the city limits, and at its narrowest point 150 feet wide, and at its greatest 200 feet. It is shown that the route to be followed by the parkway is over county roads that are now in existence, and the land of defendant is sought for the purpose of widening the roads as they now exist. It is said the entire length of the proposed parkway now forms one continuous public road extending between the two parks, and, while it is admitted that a wide road connecting them is a matter of great public convenience, it is not a matter of public necessity, and hence is not subject to be taken in the exercise of the city's right of eminent domain.

In *Newman* v. *Ashe,* 9 Baxt., 380, it was held that, while the charter of the city of Knoxville did not in ex-

press terms confer the power to purchase and hold real estate outside of the corporate limits for the purpose of constructing waterworks, it did so by necessary implication. The power to construct waterworks—a legitimate corporate purpose—is expressly given, and the authority is given to the mayor and aldermen to protect from injury, by adequate penalties, the pipes, hydrants, or fixtures, buildings or improvements, belonging to or in any way pertaining to said waterworks, whether within or without the limits of said corporation.

In *Thompson* v. *Moran,* 44 Mich., 605, 7 N. W., 180, an act of the legislature giving the city the right to purchase, improve, and control Belle Isle Park was sustained, notwithstanding the fact that it was situated beyond the corporate limits of Detroit. *Warner* v. *Town of Gunnison* (Colo. App.), 31 Pac., 238; Dillon on Municipal Corporations (3 Ed.), sections 146, 597, *et seq.; Houghton* v. *Huron Copper Min. Co.,* 57 Mich., 547, 24 N. W., 820; *Lester* v. *City of Jackson,* 69 Miss., 887, 11 South., 114; *Chambers* v. *City of St. Louis,* 29 Mo., 543; *Hagood* v. *Hutton,* 33 Mo., 244.

It will be observed that under the act of 1899 the city is authorized to exercise the right of eminent domain in condemnation of property either for parks or park purposes or parkways within a limit of ten miles from the nearest point of said taxing district or city. It was argued at the bar that it would be a great stretch of power on the part of the legislature to permit the municipal corporation to acquire land for public purposes in re-

mote portions of the State, but, as already seen, the power conferred by the act of 1899 upon the municipality of Memphis must be exercised on land situated adjacent or contiguous to the corporate limits, and within a distance of 10 miles from its nearest point.

Moreover, it appears from the record that the boulevard sought to be condemned is at all points within a mile of the corporate limits of the city of Memphis.

The next objection is that the condemnation of the land of the defendant is not a public necessity, but merely a public convenience, and for that reason the act of the legislature, so far as it attempts to authorize such appropriation, is unconstitutional and void. Mr. Lewis, in his work on Eminent Domain (vol. 1, section 175), says:

"Pleasure and recreation are not only essential to health, but tend to the improvement of character. No better instance of a public use can be given than that of a public square or park in the midst of, or convenient to, a dense population. Private property may be taken for the purpose of securing such means of recreation and health. A park is a public use, though not located in a city or town, but only in the vicinity of it. Land may be taken on each side of highways to be kept open for courtyards and ornament. Highways may be laid out for the purpose of affording access to a position which commands a fine view or for accommodating pleasure driving. The taking of a large tract in the Adirondacks for a State park was held to be for a pub-

lic use. So, limiting the height of buildings around a public park or square."

It will be observed the author states that a park is a public use, though not located in a city or town, but only in the vicinity of it, and, further, that land may be taken for driveways or for accommodating pleasure driving. In the case of *West Chicago Park Commissioners* v. *The Western Union Tel. Co.,* 103 Ill., 33, it was held that land might be condemned for building a boulevard running from the south end of Douglas Park to the Illinois & Michigan canal.

"A public park is a public use." *United States* v. *Cooper,* 20 D. C., 104.

"Land taken in a city for public parks and squares advantageous to the public for recreation, health, or business is taken for a public use, and the power of eminent domain extends thereto." *Shoemaker* v. *United States,* 147 U. S., 282, 13 Sup. Ct., 361, 37 L. Ed., 170.

"The purpose of preserving and marking on the site of the battle of Gettysburg the positions occupied by the different military organizations at that battle is a public use or purpose for which congress may authorize the condemnation of the necessary land." *United States* v. *Gettysburg Electric R. Co.,* 160 U. S., 668, 16 Sup. Ct., 427, 40 L. Ed., 576.

"The right of the public at large to acquire easements over the lands of individuals is not confined to public highways, but extends to many other easements and

uses, such as public parks and grounds." *Rowan's Ex'rs* v. *Town of Portland,* 47 Ky. (8 B. Mon.), 232.

"The legislature in 1874 authorized the appropriation of land for a public park for the benefit of the inhabitants of St. Louis county located outside the city. Held to be a public use, although chiefly beneficial to the citizens." *St. Louis County Court* v. *Griswold,* 58 Mo., 175.

"Land taken in a city for public parks and squares by authority of law, whether advantageous to the public for recreation, health, or business, is taken for a public use; and it is no valid ground of objection to the confirmation of a report of commissioners for opening a new park that the lands embraced in such park are not all contiguous, and that there are intervening blocks and spaces not taken, where such intervening spaces are not so large as to interfere with the integrity or continuity of the plan, or the equalizing of the assessments.

"They contribute to the health and enjoyment of the people and are laid out with drives and ways for public use. The proceedings in the case of the *Nahant Road,* 11 Allen, 530, and the *Mt. Washington Road,* 35 N. Y., 134, were justified on the ground that they were public highways in the ordinary sense, although primarily intended as pleasure drives." *In re Mayor, etc.,* 99 N. Y., 569, 2 N. E., 642.

"Land taken into a city for a public park, whether advantageous to the public for recreation, health, or business, is taken for a public use. And land may be condemned under the power of eminent domain not only for

public parks in cities, but may be condemned in a county for the inhabitants of the county." 10 Am. & Eng. Enc. (2 Ed.), 1084, 1085; *Matter of Central Park Com'rs,* 63 Barb. (N. Y.), 282; *People* v. *Salomon,* 51 Ill., 37; *Foster* v. *Park Com'rs,* 133 Mass., 321; *State Park Com'rs* v. *Henry,* 38 Minn., 266, 36 N. W., 874; *Brooklyn Park Com'rs* v. *Armstrong,* 45 N. Y., 234; *Matter Central Park Com'rs,* 50 N. Y., 493; *Matter Washington Park Com'rs,* 52 N. Y., 137; *Root's Case,* 77 Pa., 276; *County Ct.* v. *Griswold,* 58 Mo., 175.

It is next objected that the act of 1899 makes no provision for compensation to the owner of land condemned for parks or park purposes. In *Watauga Water Co.* v. *Scott,* 3 Cates, 321, 76 S. W., 889, it was said by this court, viz.:

"It is a fundamental principle of the law of eminent domain and the taking of property for public use that it can only be done by making just compensation to the person whose property is taken for its reasonable value, and any legislation which confers the right of eminent domain can only be valid upon condition that such compensation is provided for, and the mode and manner of ascertaining and enforcing the same is fixed and established."

Article 1, section 21, of the constitution, provides, viz.:

"Private property shall not be taken or applied to public use without just compensation being made therefor."

It is insisted that this indispensable requirement to the exercise of eminent domain for any purpose has not been observed by this act. It is said, however, that the act of 1899 is only an amendment to chapter 11, p. 28, Acts 1879, the original charter of Memphis, which does provide, viz.:

"That the private property within the taxing districts may be taken for public use in the manner now provided by law for the application of private property to public use."

It will be remarked that, while the right to take property for public use under the act of 1879 is confined to property situated within the taxing district, the amendatory act of 1899 extends the right to be exercised over property located beyond the limits of the taxing district, and within ten miles of its nearest point. It is in this respect only that the original act is amended. It will be noticed that the original act of 1879 does not in terms provide for compensation to the landowner, yet it says it may be taken for public use in the manner now provided by law, etc.

Now it is insisted that section 20, c. 11, p. 28, of the Acts of 1879, just quoted, incorporates into the taxing district charter the general law upon the subject of eminent domain, and, among other provisions, the obligation of just compensation to the owner.

Again it is provided by section 2 of chapter 142, p. 250, Acts 1899, viz.:

"Sec. 2.   Be it further enacted, That any such taxing

Memphis v. Hastings.

district or city may condemn parks, or land for park purposes under the power of eminent domain, and such taxing districts or cities are hereby expressly given the power to condemn for park purposes, the yards, switches, tracks, the depot and property of every character of any railroad company, and also the property of any manufacturing establishment, and also the property of any other person or corporation, either within or without the limits of said taxing district or city, but not over ten miles beyond the nearest point in said limits, as such limits may be at the time of said condemnation, and the proceedings for the exercise of this power of condemnation shall be the same as that now provided by law for the taking of private property for public uses."

It will be observed that, by virtue of this amendment, land for parks or park purposes, outside of the city limits, may be condemned, "under the power of eminent domain," and "the proceedings for the exercise of this power of condemnation shall be the same as that now provided by law for the taking of private property for public use."

We are clearly of opinion that the amendatory act of 1899 became incorporated with the act of 1879 chartering the city of Memphis, and that the general statutes of the State providing for the condemnation of private property for public uses were thereby imported into the original charter as fully as though they had been specifically designated by chapter and section of the Code. The general law providing for the taking of private

property for internal improvements is set out in sections 1844 *et seq.,* Shannon's Code. These sections provide as follows:

"Sec. 1844. Any person or corporation authorized by law to construct any railroad, turnpike, canal, toll bridge, road or causeway, or other work of internal improvement, to which the like privilege is conceded, may take the real estate of individuals, not exceeding the amount prescribed by law or by the charter under which the person or corporation acts in the manner and upon the terms herein provided.

"Sec. 1845. The party seeking to appropriate such land shall file a petition with the circuit court of the county in which the land lies, setting forth in substance, (1) the parcel of land a portion of which is wanted and the extent wanted; (2) the name of the owner of such land, or if unknown, stating the fact; (3) the object for which the land is wanted; (4) a prayer that a suitable portion of the land may be decreed to the petitioner and set apart by metes and bounds.

"Sec. 1846. Notice of this petition shall be given to the owner of the land, or, if a nonresident of the county, to his agent, at least five days before its presentation."

"Sec. 1849. After the requisite notice has been given, if no sufficient cause to the contrary is shown, the court shall issue a writ of damages to the sheriff commanding him to summon a jury to inquire and assess the damages."

ᵃ Sec. 1856. The jury will then proceed to examine

the ground and may hear testimony, but no argument of counsel, and set apart by metes and bounds a sufficient quantity of land for the purposes intended and assess the damages occasioned to the owner thereby.

"Sec. 1857. In estimating the damages the jury shall give the value of the land without deduction, but incidental benefits which may result to the owner by reason of the proposed improvements may be taken into consideration in estimating the incidental damages."

"Sec. 1859. If no objection is made to the report, it is confirmed by the court and the land decreed to the petitioner upon payment to the defendants, or to the clerk for their use, of the damages, assessed, with costs."

"Sec. 1865. No person or company, however, shall enter upon such land for the purpose of actually occupying the right of way until the damages assessed by the jury of inquest and the costs have been actually paid; or, if an appeal has been taken, until bond has been given to abide by the final judgment, as before provided.

"Sec. 1866. If, however, such person or company has actually taken possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury of inquest, in which case the same proceedings may be had, as near as may be, as hereinbefore provided, or he may sue for damages, in the ordinary way, in which case the jury shall lay off the land by metes and bounds and assess the damages as upon the trial of an appeal from the return of a jury of inquest."

113 Tenn—11

These sections of Shannon's Code substantially embrace the proceedings that are required to be taken for the condemnation of private property for any public use, which provisions, it will be observed, afford the landowner an ample remedy to receive just compensation for the land taken.

As already stated, in the opinion of the court, these sections of the Code, by the references to them found in the original charter of 1879, as well as in the amendatory act of 1899, have become an integral part of the charter of the city of Memphis.

It is next insisted that the body of the act of 1899 contains subjects which are not embraced in or germane to its title. The caption of the act is:

"An act to amend an act entitled 'An act to establish taxing districts in this State and to provide a means of local government for the same,' being chapter 2 of the Acts of 1879 and the acts amendatory thereof, so as to authorize and empower the taxing districts and cities organized under said act to acquire, improve and maintain parks for the benefit of the public." Acts 1899, p. 250, c. 142.

It is said, in the first place, that nothing is stated in the title in respect to acquiring, improving, and maintaining roadways or boulevards, but the title limits the right to acquiring, improving, and maintaining parks for the benefit of the public.

It is insisted that the body of the act, authorizing the acquisition or condemnation of land for parkways or

boulevards extending through the country merely for the purpose of connecting two parks with each other is not germane to the title.

This criticism upon the act cannot be maintained. It would be too narrow a construction of the act to exclude from its scope the building of boulevards or driveways necessary to connect two parks situated in remote parts of the city. Moreover, the legislature has not defined the shape or extent of the parks to be laid out under the provisions of this act, but has left that matter exclusively to the taste and discretion of the park commissioners and the legislative council. These authorities, in the exercise of their judgment, instead of laying out one park within the corporate limits of the city, have provided for the opening of two parks—one situated northeast of the city, and known as "Overton Park," and the other located southwest of the city, and designated as "Riverside Park." For the convenience of the public, it was necessary that these two parks should be connected by a driveway, which, as now designed by the park commissioners, has become a part of the parks themselves. It is wholly immaterial how irregular and eccentric the shape of the parks thus constructed may appear, since that matter is confided exclusively to the judgment of the park commissioners. Everything that pertains to the building, extending, or connecting the parks authorized to be built under the provisions of the amendatory act of 1899 is necessary, and by implication within the general purview of the act.

In *Mayor of New York,* 34 Hun, 444, the court said: "The parkways designated and described in the act are designed for avenues uniting four of the parks. As they have been described, they are peculiarly appropriate for the purpose, and may well be regarded as incidents to or extensions of the area of the parks themselves. One uniting what have been designated as Van Cortlandt and Bronx Parks, is intended to consist of about 88 acres of land devoted to a parkway six hundred feet in width and nearly a mile in length. Another, similarly to unite Bronx and Pelham Parks, includes an appropriation of about 91 acres of land, exclusive of an existing boulevard. The width of this driveway will be 400 feet, and its length two and one half miles. The third is of minor importance, and is designed to serve as a similar avenue between what is called Cretonia and Bronx Parks." *People, ex rel., Seaver,* v. *Green,* 52 How. Prac., 440.

The court of appeals of New York, in *Re Mayor of New York,* 99 N. Y., 576, 2 N. E., 642, in dealing with a similar subject, said as follows:

"The title is, 'An act laying out public places and parks and parkways in the twenty-third and twenty-fourth wards of the city of New York and in the adjacent district of Westchester county and authorizing the taking of land for the same' (Laws 1884, p. 625, c. 522), and is claimed to violate section 16, art. 3, of the constitution, requiring that a private or local title shall em-

brace but one subject, which shall be embraced in the title.

"Section 6 of the park act authorizes the use of a portion of Van Cortlandt Park for the purpose of a rifle range and military parade ground, and section 12 extends over the whole of the newly acquired territory the jurisdiction of the department of public parks, which by the city charter of 1873 was made the dominant authority for their maintenance and protection.

"It is insisted that two new and separate subjects are thus injected into the body of the act, without hint or reference in the title.

"The criticism is quite too rigid and narrow. It would lead to a condemnation which few titles would escape, until they became cumbersome and awkward digests of the details of their enactments. What are here designated new subjects are fairly and reasonably elements and details of the laying out of new parks and the acquisition of lands therefor, and so embraced in the one general subject of the bill."

It is also objected that the body of the act authorizing the creation of a park commission and the election of commissioners presents another subject that is not embraced within the title of chapter 142, p. 250, Acts 1899.

This objection is also untenable, since the creation of a park commission and a board of park commissioners is clearly within the purview of an act which authorizes the city of Memphis to acquire, improve, and maintain parks for the benefit of the public. A park commission

is a useful and almost indispensable instrumentality for the maintenance and supervision of a system of public parks. Other criticisms of a similar nature are made on this act, but none are well taken, since, in our opinion, they are all settled by the rule laid down in *Hyman* v. *State,* 87 Tenn., 109, 9 S. W., 372, 1 L. R. A., 497. The rule therein announced is that an amendatory act whose caption merely recites the title of the original act, without enlarging its scope, is constitutional and valid, provided its purview is germane to the title of the original act.

All of the subjects which are claimed by counsel for defendant in error to be outside of the title of the amendatory act are clearly within its purview, since they all relate to the one subject-matter embraced in the title, viz., the acquisition, improvement, and maintenance of parks for the benefit of the public. It results that the judgment below was erroneous, and is reversed, the demurrer overruled, and the cause remanded.